WILLIAMS, J.,
The government has appealed from this court’s order precluding it “from admitting any evidence regarding a particular blood alcohol result” in an upcoming trial. Order (March 13, 2014). It makes two arguments concerning the court’s action. First, it says the court abused its discretion in ordering exclusion of the blood alcohol results. Concise statement of errors complained of on appeal, paragraph 1 *8 (May 6, 2014). Second, it says the court should have held a hearing before it took such action. Id., paragraph 2.
On May 3, 2013, Mr. Marston had interaction with law enforcement. He was charged with various crimes and eventually an Information was filed on August 19th charging him with three (3) counts of driving under the influence of alcohol and impersonating a public servant. The DUI counts were driving with a BAG of .149, 75 Pa.C.S. Section 3802(b), driving after imbibing a sufficient amount of alcohol that rendered him incapable of safe driving where there was an accident where injury or damage to property was caused, 75 Pa.C.S. Section 3802(a)(1) and 3804(b), and then, a general impairment count, 75 Pa.C.S. Section 3802(a)(1). On August 22,2013, Marston waived his formal arraignment, counsel entered their appearance and a pretrial conference was scheduled for September 27, 2013.[1] The result of that conference was atrial date of December 17, 2013.
On October 31st, Marston filed a motion to compel discovery. The motion detailed with a fair amount of precision the exact items he was seeking from the government. See, Exhibit A. The court quickly scheduled a status conference with counsel for November 13th. Both counsel appeared and, after hearing their respective positions, the court granted the motion and directed the government to produce all the evidence set forth in the defendant’s Exhibit A. That exhibit was attached to *9 the court’s order of December 4th. The deadline for compliance was December 20th.[2]
That deadline came and went without any compliance by the government. On January 6, 2014, government counsel filed a motion for extension. This request asked for more time to comply. Its reason for failing to comply was that it “did not receive a copy of [the] order until Monday, December 30, 2013.”[3] It suggested a new deadline of February 26, 2014. Lastly, the government requested that Marston pay for the reproduction costs of this discovery.
The court’s order of January 8, 2014 addressed the government’s motion. It granted the request for more time and used its suggested due date -February 26, 2014 — as the new deadline. The court deferred the costs issue until the case concluded.
Two weeks later, on January 22, 2014, the government moved for a postponement of the February 27th trial date. Its justification to delay the trial was “to provide additional discovery” to Marston. Motion for continuance, (Jan. 22, 2014). The court granted the motion and set a new trial date of April 16, 2014.
On March 10, 2014, Marston filed a motion seeking dismissal of all of the charges. On March 13th, the court convened a status conference with both counsel. Upon *10 conclusion of the conference, the court entered an order granting in part and denying in part Marston’s motion. The court did not dismiss any of the charges. Instead, it excluded “any evidence regarding a particular blood alcohol result in the upcoming trial.” Order (March 13, 2014). The order also established some key dates for future events in regards to the trial.
On April 2, 2014, Marston filed an omnibus pretrial motion seeking various forms of relief. A week later, the court dealt with most of Marston’s matters through an order.
Just two days later, on April 11th, the government filed a notice of appeal. It was appealing from this court’s order of March 13, 2014. That was the order where the court excluded any evidence of Marston’s BAC result. The government was then directed to file a concise statement of errors complained of on appeal. The government timely complied on May 6, 2014.
The government’s position is two-fold. First, it complains this court abused its discretion when it excluded the government’s evidence of the BAC result. Its next complaint is that this court abused its discretion by ordering the exclusion of evidence without a hearing. The court will address these assertions of error in reverse order.
There are a myriad of issues that arise in criminal cases in Allegheny County’s Court of Common Pleas.[4] As a *11 means to handle these issues, the court has, in the past few years, found great value in holding status conferences with counsel. Many times the conference is schedule upon the court’s review of pleadings that are filed and the court’s working knowledge of local courthouse dynamics which can lead to a delay of the trial. The court has found this early judicial intervention contributes to less delay which consequently leads to a more efficient judiciary. The result of most status conferences falls into two camps. One is the sharpening of an issue to a fine point. The other is exposing the fallacy of a legal position or collection of facts. Regardless of which label is worn, it allows counsel and the court to focus its energies moving forward on what really is at issue.
From that backdrop, the court finds the request for a hearing to be without foundation. At no time after the court excluded the evidence did the government request reconsideration which would invariably have included a request for a hearing. The first time the court heard about a hearing was in their statement of errors. The government’s actions run contrary to established appellate policy to give the trial court the first opportunity to correct a supposed error. Incidentally, the court has no recollection of government counsel asking for a hearing during any of its status conferences.
Now, to address what the court feels is the government’s major point of contention. The government feels this court was wrong when it excluded a particular piece of evidence from its evidentiary quiver. The court made *12 this ruling based upon a coalescence of circumstances. The government ignored two court orders to produce the material. The first deadline was December 19th. The government did not comply and only asked for an extension of time to comply about 2 weeks after the date had passed. Then came February 26th and the material was still not produced. This alone would be a sufficient reason to take the action the trial court did as a means of vindicating its authority. But, there was more involved. The failure to produce the material before that date negatively impacted Marston’s ability to be prepared for the court’s status conference on March 13th. Marston was not the only party adversely affected. It was the court’s intention on that day to explore any expert witness issues with counsel and otherwise begin to limit the matters truly at issue for trial. That could not happen because the government’s eventual disclosure of the material on March 7th (which was the Friday before a status conference on Wednesday, the 12th) did not allow Marston sufficient time to forward the material to his expert. This then did not allow the proposed expert a reasonable period of time to digest the material and then communicate with counsel to see if an issue was present which would require the expert’s services. The end result of this was the trial date got pushed back. Why? Because the government was not diligent in disclosing this material.
Pa.R.Crim.P. 573(E) identifies remedies available to a trial court to extract compliance from both parties regarding discovery. The rule says:
(E) REMEDY If at any time during the course of the *13 proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.
Pa.R.Crim.P. 573(E). “This provision gives the trial court broad discretion in formulating remedies for a failure to comply with discovery requirements.” Commonwealth v. Galloway, 771 A.2d 65, 68 (Pa. Super. 2001)(citation omitted). And, the remedies provided in paragraph (E) “apply equally to the Commonwealth and the defendant as the interests of justice require.” Commonwealth v. McNeil, 808 A.2d 950, 956 (Pa. Super. 2002) (referencing the Comment to Rule 573).
This court utilized each of the progressive sanctions set forth in this rule. It first ordered the government to provide the defense with the requested information. On the heels of that directive, the court had the trial date postponed by Marston. The court’s thinking was that if he wanted the material to help in his defense then the court was willing to push the trial date back at his speedy trial expense. The first deadline passed without compliance. This necessitated the granting of the government’s motion and establishment of a new deadline, a deadline that it suggested. The court then ruled that this additional time would not be excluded from the speedy trial calculus. When the second deadline passed without compliance,[5] the court increased the sanction and *14 prevented the government from using the blood alcohol results. It is important to note that the court did not impose the ultimate sanction of dismissal even though Marston asked for such.
This court’s final observation returns us to the government’s notice of appeal. Contained within this document is a certification. The certification says this is an appeal from the “granting [of] defendant’s pretrial motion to suppress evidence, [which] substantially handicaps and/or effectively terminates prosecution of appellee/ defendant on the specified charges. See Commonwealth v. Dugger, 506 Pa. 537, 486 A.2d 382 (1985).” Notice of appeal, (April 11, 2014).
The certification is not accurate. The order appealed from was not a pretrial motion to suppress certain evidence but a pretrial order stemming from a discovery violation and disobedience of two court orders.
In addition, the impact upon the government’s case is misrepresented by its absence of information. Marston was charged with 4 crimes: 3 counts of driving while impaired and impersonating a public servant. The non-DUI count is not impacted by this court’s order whatsoever. The general impairment count of DUI is not substantially impacted by this court’s action as the traditional evidence which supports this count is the officer’s observations and his opinion filtered through his experience. The quintessential item of evidence for this count is not the BAC result. *15 Similarly, the general impairment count coupled with a factual aggravator (injury or damage to property) is not so greatly impacted. The sole count which appears to have been effectively terminated by the order is the DUI count where the accusation is that he was driving with a specific BAC within 2 hours of driving. So, can the government still obtain a conviction on 3 of the 4 counts without the BAC result? The probabilities are there. The court has taken the time of discussing the interplay of the charges and the excluded BAC result to show that it did, in fact, exercise restraint and conducted a proper balancing of the equities involved.
The department of court records shall now forward the certified record to the Superior Court of Pennsylvania in due course.

. This activity took place on August 22nd as evidenced by the date counsel signed the waiver of arraignment form and the notice of formal arraignment was for the same date. This differs by a day from the docket entries.

. The court recognized the due date would be past the original trial listing of December 17th and both counsel knew that on the 17th, Marston would be the moving party for a continuance of the trial. On the 17th, a new trial date was set for February 27,2014.

. The court notes that government counsel at the November 13th status conference was the same counsel identified as receiving copies of the court’s December 4th order.

. In 2013, the criminal division adjudicated 20,821 cases. In 2012, the number was 19,186. As of today, there are 14 criminal court judges. Using an average of 20,000 cases divided by the 14 judges in this *11 division, this courtroom is responsible for 1,428 cases a year.

. It is worthy of noting that as the end of February deadline *14 approaches, the government does not ask for an additional short period of time to comply. It’s as if arrogance had crept into their thinking. “Oh the court won’t mind, I’m just a few days late.”